IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANGADBIR SINGH SALWAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREI IANCU, Under Secretary of Commerce )<br>for Intellectual Property and Director of the )<br>United States Patent and Trademark Office, )<br>)<br>Defendant. ) | 1:18-cv-1543 (LMB/TCB) |

## MEMORANDUM OPINION

In this civil action brought pursuant to 35 U.S.C. § 145, plaintiff, pro se, Angadbir Singh Salwan ("Salwan") seeks a judgment that he is entitled to a patent covering the claims in United States Patent Application 15/188,000 ("the '000 Application"), which the United States Patent and Trademark Office ("USPTO") rejected as patent-ineligible and obvious under 35 U.S.C. §§ 101 and 103. Before the Court are the parties' cross-motions for summary judgment. Finding that oral argument would not assist the decisional process, the Court has resolved these motions on the submitted materials. For the reasons that follow, defendant's Motion for Summary Judgment [Dkt. No. 14] will be granted, and plaintiff's Motion for Summary Judgment [Dkt. No. 12] will be denied.

### I. BACKGROUND

Plaintiff Salwan is an electronic engineer and inventor. A385.[1] His claimed invention is called the "Physician to Patient Network System" ("P2P"). A10, A25. According to the patent application, P2P "relates, generally, to the field of applying Information Technology for the

---

[1] References in the form "A___" are to the administrative record [Dkt. No. 10].

benefit of [the] healthcare ... industry." A12. The P2P system is a "private [and] secure network system for independently practicing physicians and patients" and its purported functions include facilitating "real-time electronic communication [and] transfer of patient health information."[2] A25.

Applications for patents follow a multi-stage review process. First, an application is assigned to a patent examiner, who reviews the application's claims to determine patentability. See 35 U.S.C. § 131. If the examiner finds that the claims are not patentable, the applicant may seek reconsideration. Cf. id., § 132. If, after reexamination, the claims are still rejected, the applicant may file an appeal of that decision with the Patent Trial and Appeal Board ("PTAB"). See id. § 134(a). While a patent application is pending, applicants have the option to file a "continuation application," which enables them to "claim the benefit of one or more prior-filed" applications. 37 C.F.R. § 1.78. The "disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application." Manual of Pat. Examining Proc. § 201.07.

Salwan has filed a series of patent applications related to the '000 Application.[3] The one most relevant to this civil action was Application 12/587,101 ("the '101 Application"), filed in 2009 and which relates to underlying subject matter nearly identical to that in the '000 Application at issue here. In January 2015, after the standard two-step internal review process, the patent examiner rejected the '101 Application, finding, *inter alia*, that the application covered

---

[2] The complete '000 Application, which includes discussion of additional claimed functions, may be found in the administrative record at A1-A75.
[3] Salwan asserts that he filed his first application in this series in June 2005 (Application 60/687,904), and his second application in June 2006 (Application 11/447,627). A10. The record does not reflect that either of these two applications were granted and the Court assumes from this lack of evidence that they were not.

patent-ineligible subject matter under 35 U.S.C. § 101 and was obvious under 35 U.S.C. § 103(a). In re Salwan, 681 Fed. App'x 938, 940 (2017) ("Salwan I"). The PTAB affirmed that rejection, which Salwan appealed to the United States Court of Appeals for the Federal Circuit. After a de novo review, the Federal Circuit affirmed in a per curiam opinion, holding that Salwan's claims were "directed to patent-ineligible subject matter." Id. Because this determination disposed of Salwan's application, the Federal Circuit did not reach the merits of the PTAB's rejections under § § 103 and 112.

On June 21, 2016, after appealing the PTAB's rejection of the '101 Application to the Federal Circuit, Salwan filed the '000 Application, which he characterized as a continuation of the '101 Application. A10-11. The '000 application states that it "contains subject matter disclosed in the" '101 Application and that "[n]o new subject matter has been added in the current application," A11, and Salwan admits that he "did not make any changes in the specification or the drawings" since his initial application. A381. The '000 Application includes 20 claims. A52-59. Claims 1, 10, and 20[4] are independent, while claims 2 through 9 depend on Claim 1, and Claims 11 through 19 depend on Claim 10. A274-281. Claim 1 of the '101 Application is similar to Claim 1 of the '000 Application.[5] The parties agree that Claim 1 in both

---

[4] Claim 20 does not appear to have an exact corollary in the '101 Application, and it is slightly different from Claims 1-19 in that it does not involve a central database. The Court finds that the differences apparent in Claim 20 are insufficient to render the claim patent eligible.

[5] Claim 1 of the '101 Application states:

> A method for transferring patient health information among healthcare user groups or patients via a network, the method comprising: providing at least one central data storage configured to receive and store patient health data from one or more private data storages of healthcare user groups, at least one central computer program embodied in at least one computer readable medium or embodied in at least one central server for processing and transferring patient health information stored in the one or more central data storages, and at least one device for providing user authorization to access patient data stored in the one or more central data storages, and configuring the central computer program or the

3

applications is representative of the claimed invention. Salwan I at 939 ("The parties agree that claim 1 is representative"); Pl.'s Reply Brief in Supp. of Mot. for Summ. J. and in Opp'n to

> central server for: communicating through at least one computer program, which includes EMR and billing software, embodied in a computer readable medium with at least one private data storage storing electronic medical record (EMR) information originated, entered and controlled by at least one or more first healthcare service providers affiliated with the one or more healthcare user groups, including at least accounts information confidential for the first healthcare user groups, the confidential information includes at least accounts information of one or more insurance companies, which is at least used by the billing software to calculate patient portion of the bill, and clinical data generated by one or more service providers; receiving from the at least one private data storage the EMR information for storing, processing and transmission to at least one of the patients, or one or more second healthcare user groups, wherein the information confidential for the first healthcare user groups including at least the accounts information of one or more insurance companies is not received and stored at the central data storage; storing the received EMR information generated by the one or more service providers including at least one of health problems, medications, diagnosis, prescriptions, notes written by the service Providers, diagnostic test results or patient accounts data in the at least one central data storage; selectively retrieving the stored EMR information, generating one or more healthcare reports including one or more of health problem list, medication list, diagnoses report, prescription, diagnostic test result report, patient billing report; and transmitting one or more healthcare reports to at least the second authorized healthcare user groups or the patient for reviewing. Salwan I at 939-40.

Claim 1 of the '000 Application states:
> An EMR computing system for exchanging patient health information among healthcare user groups or the healthcare user group and patients over a network, the system comprising: a central computer program embodied in a computer readable medium or embodied in a central server and a central database storing patient EMR data for access by authorized users, the central computer program configured to: communicate through at least one computer program, which includes EMR and billing software, with at least one private database for a healthcare user group, the database comprising at least patient EMR and billing data, and accounting data confidential for the healthcare user group; receive from the at least one private database EMR data including at least one of health problems, medications, diagnosis, prescriptions, notes written by a healthcare service provider, diagnostic test results or patient accounts data for storing in the central database, wherein the healthcare user group's confidential accounts data including one or more insurance companies accounts data, is not received; selectively retrieve the stored EMR data, generate one or more healthcare reports including one or more of health problem list, medication list, diagnoses report, prescription, diagnostic test result report, patient billing report; and transmit one or more healthcare reports to an authorized healthcare user group or the authorized patient for reviewing. A52 (internal formatting omitted).

Def.'s Mot. for Summ. J. [Dkt. No. 19] (referring to "my claim 1, the representative claim,"); Def.'s Brief in Supp. of Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. [Dkt. No. 16] ¶ 34 ("Claim 1 is representative").

The '000 Application went through the standard review process at the USPTO. On September 7, 2016, the patent examiner issued an initial decision rejecting Salwan's claims. A89-118. The examiner rejected Claims 1 through 20 under 35 U.S.C. § § 101 and 103, concluding that they were directed to non-statutory subject matter and "would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[6] A92, A97-98 (quoting pre-America Invents Act 35 U.S.C. § 103(a)). Salwan filed a response and requested reconsideration on December 6, 2016, A120-49, but the examiner's second review reached the same conclusions as to the application's patent eligibility and obviousness. A153-83. Salwan appealed to the PTAB on May 17, 2017, A184-85, A206-38, A242-86, and the PTAB issued a decision on June 11, 2018 upholding the examiner's rejections as to subject matter and obviousness. A321-337. Salwan petitioned for rehearing, A338-53, and the PTAB declined to modify its opinion. A354-73.

Salwan filed this action on December 14, 2018. The parties filed a Joint Motion for a Briefing Schedule on April 10, 2019, agreeing "that this matter may be adjudicated on cross-motions for summary judgment based on the evidence and argument in the administrative record,

---

[6] The examiner also initially concluded that certain of the claims failed to comply with the written description requirement under 35 U.S.C. § 112 or 112(a). A91. The PTAB did not sustain this portion of the examiner's decision. A328.

5

without discovery and without the need for Defendant to formally answer the complaint." [Dkt. No. 8]. The parties' cross-motions[7] for summary judgment are fully briefed.[8]

II. DISCUSSION

A. **Standard of Review**

A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the record in the light most favorable to the nonmoving party and must draw all inferences in favor of that party; however, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Accordingly, to survive a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson Everett, Inc. v. Nat'l Cable Advert., L.P, 57 F.3d 1317, 1323 (4th Cir. 1995); Poole v. Pass, 351 F. Supp. 2d 473, 478 (E.D. Va. 2005).

The Court must also apply the standard of review applicable to actions brought under 35 U.S.C. § 145. When the PTAB denies a patent application, the applicant may appeal directly to

---

[7] Defendant asks the Court to disregard Salwan's memoranda because they are not in compliance with Local Rules 7(F)(3) and 56(B) and include inadmissible hearsay. [Dkt. No. 16] at 13-14. Given that the filings of pro se plaintiffs are to be construed liberally, there is no need to take this action.

[8] On August 12, 2019, after the cross-motions for summary judgment were fully briefed, Salwan filed a document styled as a "Motion to Dismiss Defendant's Reply Memorandum and Enter Arguments of this Motion." [Dkt. No. 23]. Although Salwan did not seek leave of court to file an additional brief, it has been considered and will not be struck from the record.

the Federal Circuit, 35 U.S.C. § 141, or, alternatively, may file a civil action under 35 U.S.C. § 145 in this district.[9] Section 145 permits applicants to introduce evidence that was not presented to the USPTO. See Kappos v. Hyatt, 566 U.S. 431, 435 (2012). When the parties elect to do so, the action is treated as a "hybrid of an appeal and a trial de novo." Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1345 (Fed. Cir. 2000). But where, as here, the parties agree to proceed on the administrative record alone, Joint Mot. for Briefing Schedule [Dkt. No. 8], the Court reviews the PTAB's decision under the deferential standard supplied by the Administrative Procedure Act ("APA"). Johnson v. Rea, No. 1:12-cv-440, 2013 WL 1499052, at *2, 3 (E.D. Va. April 9, 2013). Under this standard, the Court may only set aside a PTAB decision that is unsupported by substantial evidence. Id. (citing 5 U.S.C. § 706(2)(a) and Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005)); Hyatt v. Kappos, 625 F.3d 1320, 1336 (Fed. Cir. 2010), aff'd and remanded, 566 U.S. 431 (2012). "If there is substantial evidence to support the [PTAB's] determination, then Defendant is entitled to summary judgment." Johnson, 2013 WL 1499052, at *2.

When a patent application is rejected, the USPTO bears the initial burden of establishing a prima facie case of unpatentability, which "need not be a full exposition on every conceivable deficiency of a claim . . . Rather, its purpose is simply to provide sufficient notice to the applicant to facilitate his effective submission of information." Hyatt v. Dudas, 492 F.3d 1365, 1370 (Fed. Cir. 2007). The burden then shifts to the applicant to produce evidence or argument to rebut that prima facie case. Id. Finally, patentability is "determined on the entirety of the

---

[9] The United States District Court for the District of Columbia originally had exclusive jurisdiction over actions brought under 35 U.S.C. § 145; however, the Leahy-Smith America Invents Act transferred that jurisdiction to the United States District Court for the Eastern District of Virginia, effective September 16, 2011. See Pub. L. No. 112-29 § 9, 125 Stat. 284, 316.

record, by a preponderance of evidence and weight of argument." In re Glaug, 283 F.3d 1335, 1338 (Fed. Cir. 2002).

**B. Analysis**

   i.   **The Federal Circuit's application of the Alice test in Salwan I**

The Federal Circuit has already addressed the core issue in this case, concluding that the subject matter in the '101 Application, which is extremely similar to the subject matter in the '000 Application, was not patentable. Salwan I at 939-41. To be patentable, a claimed invention must cover patent-eligible subject matter under 35 U.S.C. § 101, which provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title. Id.

To determine whether an invention covers patent-eligible subject matter, the examiner must apply the two-step test discussed in Alice Corp. v. CLS Bank Int'l, 573 U.S. 208 (2014). Under the first step, the examiner determines whether the claims cover "[l]aws of nature, natural phenomena, and abstract ideas." Id. at 217. The Supreme Court has long held that such concepts are not patentable, because they represent the "basic tools of scientific and technological work." Assoc'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013) (internal citations omitted). Granting a patent for such an idea, the Supreme Court has held, "'might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." Alice, 573 U.S. at 216 (internal citations omitted); see U.S. Const., Art. I, § 8, cl. 8 (Congress "shall have Power ... To promote the Progress of Science and useful Arts").

The Supreme Court has nonetheless recognized that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" Alice, 573 U.S. at 217. Accordingly, "an invention is not rendered ineligible for patent simply

because it involves an abstract concept." Id. Instead, examiners must proceed to a second step, and "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." Alice, 573 U.S. at 221 (quoting Mayo Collaborative Servs. v. Prometheus Labs, 566 U.S. 66, 72-73 (2012)). If a "patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer' . . . that addition cannot impart patent eligibility." Alice, 573 U.S. at 223 (quoting Mayo, 566 U.S. at 84). And if the elements of a claim involve "well-understood, routine, [and] conventional activity previously engaged in by researchers in the field," "they do not constitute an 'inventive concept.'" Exergen Corp. v. Kaz USA, Inc., 725 F. App'x 959, 963 (Fed. Cir. 2018) (quoting Mayo, 566 U.S. at 73).

The Federal Circuit in Salwan I applied the Alice two-step test to the '101 Application and concluded that all pending claims were "directed to patent-ineligible subject matter." Salwan I at 940. Under Alice step one, it held "that the claims are directed to the abstract idea of billing insurance companies and organizing patient health information," and concluded that "[t]his describes little more than the automation of a 'method of organizing human activity' with respect to medical information." Id (quoting Alice, 573 U.S. at 220). Responding to Salwan's argument that "the claims are not directed to an abstract idea because the calculation of a patient's bill and the transfer of patient EMR are not theoretical concepts," the Federal Circuit concluded that these concepts are "fundamental economic and conventional business practices," which are "often held to be abstract." Id.

Under Alice step two, the Federal Circuit found that the "recited method steps 'fail[ed] to transform the nature of the claim as they are directed to generic computer structures for storing and transferring information,'" and "merely implement long-known practices related to

insurance billing and organizing patient health information on a generic computer." Id. Salwan argued before the Federal Circuit that his claims were inventive because they enabled the healthcare industry to avoid exchanging patient health information "using fax machines, or sending paper documents by postal mail, which was inefficient, costly, and time consuming." Id. at 941. The Federal Circuit found that this argument simply underscored the extent to which the claims were "directed to well-known business practices," and determined that Salwan's inclusion of elements like a generic "network," "computer program," and "central server" was "not enough to transform the idea into a patent-eligible invention." Id. It further found that Salwan's "reference to features recited by the dependent claims—such as video conferencing, patient appointment scheduling, patient registration forms, health-related advertisements, and allowing physicians to create handwritten EMR" did not alter its conclusion. Id.

The conclusions in Salwan I with respect to the '101 Application apply with equal force here. The Federal Circuit held that Representative Claim 1 of the '101 Application "recites storing, communicating, transferring, and reporting patient health information in a network." Salwan I at 941. The '000 Application does the same. Like the claims of the '101 Application, the claims of the '000 Application are generally directed to the abstract idea of "billing" and "organizing patient health information." Id. The claims in the '000 application represent "fundamental economic and conventional business practices," which are often held to be abstract. See, e.g., Alice, 573 U.S. at 219 (finding "a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk" abstract); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (observing that "claims directed to the mere formation and manipulation of economic relations" have been held to involve abstract ideas).

Like the '101 Application, the '000 Application lacks an inventive concept that would render it patent-eligible. As in Salwan I, the inclusion of terms like a generic "network," "computer program," and "central server," are insufficient to transform an abstract idea into a patent-eligible invention. Salwan I at 941. The Federal Circuit concluded that the additional features recited by the dependent claims of the '101 Application did not make the application patent-eligible. Id. The '000 Application includes similar additional features.[10] As the Federal Circuit did in Salwan I, this Court concludes, upon considering the '000 Application's claim elements individually and in combination, that they "merely implement long-known practices." Id. at 940.

Salwan argues that the differences between the '000 Application and the '101 Application mean that Salwan I is irrelevant here.[11] But the articulated differences are insufficient to counsel a different outcome from Salwan I. Plaintiff observes, correctly, that the Federal Circuit in Salwan I discussed the following limitation included in Claim 1 of the '101 Application: "billing software to calculate a patient's bill." Salwan I at 941. Salwan argues that because the '000 Application does not include that specific limitation, it should be treated differently. Pl.'s Reply Brief [Dkt. No. 19] at 7. But the '000 Application also references "billing

---

[10] The Salwan I opinion lists the following features, each of which are also included in some form in the '000 Application: video conferencing [recited in Claims 2 and 16 of the '000 application], patient appointment scheduling [recited in Claims 4 and 5 of the '000 Application], patient registration forms [recited in Claim 9 of the '000 Application], health-related advertisements [recited in Claims 7, 8, and 15 of the '000 Application], and allowing physicians to create handwritten EMR [recited in Claims 13 and 14 of the '000 Application]. Both applications also recite other features, which do not change the Court's conclusions.

[11] Salwan suggests that because the Federal Circuit opinion in Salwan I is not part of the administrative record, it should not be considered here. Pl.'s Reply Brief [Dkt. No. 19] at 6. He is incorrect. Although the parties agreed that the factual record in this case would be limited to the administrative record underlying the '000 Application, that agreement does not bar consideration of legal authority outside the administrative record.

software," A52, and the differences between that limitation and the one at issue in the '101 Application are not significant enough for the Court to conclude that the Federal Circuit's conclusions do not apply here. Moreover, the Federal Circuit's opinion did not rely on the '101 Application's billing software alone; it also concluded that the "transfer of patient EMR" is abstract. Salwan I at 941. Salwan has offered no evidence to suggest that the '000 Application is not similarly directed to the "transfer of patient EMR."[12]

Salwan further argues that because Claim 1 of the '000 Application begins with the new limitation "An EMR computing system for exchanging patient health information," rather than the limitation included in the '101 claim ("A method for transferring patient health information"), the two claims should be evaluated differently. The Court disagrees. Salwan suggests that the use of the limitation "[a]n EMR computing system" "clearly implies that [the] claim has computer activity and not any human activity." A398. "But [s]tating an abstract idea while adding the words 'apply it with a computer'" or an EMR computing system "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." Alice, 573 U.S. at 223. See also Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed. Cir. 2014) ("adding a computer to otherwise conventional steps does not make an invention patent-eligible"). Because the '000 Application represents merely an abstract idea, the addition of this element does not save it from being patent-ineligible.

### ii. The decision of the examiner and the PTAB

The record supports the conclusion that the examiner and the PTAB appropriately applied Alice to come to this same conclusion. Under Alice step one, the examiner reasonably

---

[12] Salwan concedes that the subject matter of the '000 Application is the same as the '101 Application. A11, A381. Although this concession is not dispositive, it does provide support for the conclusion that the analysis and conclusion in Salwan I should apply to the '000 Application.

concluded, as the Federal Circuit did in considering the '101 Application, that Salwan's claims were abstract, because "the claimed system simply describes the concept of gathering, combining, and outputting data by reciting steps of *receiving, comparing and outputting data*," which is similar to concepts that "ha[ve] been found by the courts to be an abstract idea." A157 (emphasis in original). At <u>Alice</u> step two, the examiner found that "the recited generic computing elements" are

> at a high level of generality and perform the basic functions of a computer.... Merely using generic computer components to perform ... basic computer functions ... does not constitute a meaningful limitation that would amount to significantly more than the judicial exception, even though such operations could be performed faster than without a computer. A158.

The examiner concluded appropriately, as the Federal Circuit did with respect to the '101 Application, that none of the dependent claims was sufficiently inventive to change the outcome. A162. This decision adequately established a prima facie case of unpatentability, such that the burden shifted to Salwan to produce evidence or argument to rebut that prima facie case. He failed to do so adequately. Throughout the course of Salwan's various appeals, the examiner and later the PTAB responded to his arguments with well-reasoned responses. The Court concludes that the examiner and the PTAB's decision-making was supported by substantial evidence.

### iii. Salwan's other arguments against the examiner and the PTAB's decision

None of the arguments articulated in Salwan's briefs persuade the Court that either the examiner or the PTAB lacked substantial evidence for its rejection of the '000 Application.[13]

---

[13] Salwan has made many arguments before this Court, the examiner, and the PTAB over the course of this process. These arguments include, but are not limited to, the assertions that the USPTO is corrupt; that because certain EMR systems have been found patentable in the past, Salwan's application is necessarily patentable; that the examiner copy-pasted inaccurate information into the decision on Salwan's application; that because his P2P system has a real world application, it cannot be abstract; that his 2005 application has been copied; and that the examiner and PTAB used high-level, generic language to reject his claims. In this opinion, the

13

Some of Salwan's arguments have already been assessed and rejected by the Federal Circuit in Salwan I. For example, Salwan argues that the examiner failed to consider the following allegedly "new and useful, patent eligible inventive-steps" of Claim 1:

> not allowing the confidential data to be transferred from the private database (thus keeping it safe and secure); only transferring patient EMR data (medications, diagnosis, prescriptions etc.) to the central database; and computation of EMR reports to be accessed by authorized healthcare user groups and patients. Pl.'s Opening Brief in Supp. of Mot. for. Summ. J. [Dkt. No. 13] at 6.

Salwan made the exact same argument before the Federal Circuit,[14] and the Federal Circuit concluded that it was without merit. Salwan I at 941. Salwan has presented no persuasive reason to suggest the result should be different in this context.

Salwan also protests that the examiner should not have referred to other cases in which courts have identified patent-ineligible concepts. But as the PTAB explained in its decision,

> [a]s is typical when an Examiner references a court case, the reference was not cited because both the court case and the pending claims are indistinguishable. Instead, Examiners cite such court cases because the analyses and holdings expressed by the court could be analogized to the present situation, and here, the cases were relied upon as guidance and authority regarding issues presented in the Appellant's Application. A330.

The examiner and PTAB's references to well-established case law in this manner was proper.

Even construing Salwan's filings liberally, as courts must when reviewing actions filed by pro se litigants, the Court finds that the PTAB's decision was supported by substantial evidence, and that Salwan has presented insufficient evidence to overcome defendant's motion

---

Court does not individually discuss every one of these arguments, but finds that none of them is sufficient to change the conclusions about the adequacy of the PTAB's rejection of the '000 Application.

[14] See Salwan's Corrected Initial Brief in Salwan I, No. 2015-7758, [Dkt. No. 10] at 15, where Salwan argues that "both [the examiner and the PTAB] have ignored the new and useful, patent eligible inventive-steps of claim I, such as not allowing the confidential data to be transferred from the private database (thus keeping it safe and secure); only transferring and storing patient EMR data (medications, diagnosis, prescriptions etc.) to the central database, and computation of EMR reports to be accessed by authorized healthcare user groups and patients."

for summary judgment. Because the Court has concluded that the examiner and PTAB's determination that the '000 Application covered patent-ineligible subject matter under 35 U.S.C. § 101 was supported by substantial evidence, the Court need not reach Salwan's arguments as to the non-obviousness of his claims under 35 U.S.C. § 103.

### III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment [Dkt. No. 14] will be granted and plaintiff's Motion for Summary Judgment [Dkt. No. 12] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 30 day of August, 2019.

Alexandria, Virginia

/s/
**Leonie M. Brinkema**
**United States District Judge**